GEORGE HOWARD v. OLD DOMINION STEAMSHIP
COMPANY.

*Contract of Affreightment—Place of Delivery—Liability of Carrier.*

In an action for damages against a steamboat company it appeared that the plaintiff put on board one of defendant's boats certain iron to be conveyed to one W at Greenville; that there was an understanding between the defendant's agent and W (of which plaintiff was ignorant) that all freight transported for him should be landed at a place on the river bank near his house, and that the iron was landed there; that shortly after W refused to pay the freight bill and notified defendant's agent that he should not take the goods away; that afterwards one B without authority from W was permitted to pay the freight bill, and

took the iron away ; that the plaintiff never received any information as to the disposition of the iron ; *Held*, that plaintiff was entitled to recover.

CIVIL ACTION for Damages, tried at Spring Term, 1880, of EDGECOMBE Superior Court, before *Gudger, J.*

Judgment for defendant, appeal by plaintiff.

*Messrs. Howard & Nash,* for plaintiff.
*Mr. W. B. Rodman,* for defendant.

SMITH, C. J. In January, 1878, the plaintiff put on board the company's steamer, a passenger and freight boat running on Tar river between Tarboro and Washington passing the town of Greenville, certain irons to be conveyed and delivered to William Whitehead at the last named place. There was an understanding between the defendant's agents in charge of their steamer and Whitehead that all freight transported on the boat for him should be landed at Clark's banks on the river, near which he resided, and notice given by three blasts from the steamer's whistle, and the articles were put ashore in accordance with this agreement. Whitehead a few days after, on being presented by a collecting agent of the company with bills for the goods and for freight, refused to pay either, saying he had ordered no such goods, should not take them nor pay for their transportation. The iron was then at Clark's landing and remained there a week longer when one Butts without authority from Whitehead or the plaintiff, called on the captain of the boat, paid the freight charges and took and carried away the goods. No information was given to the plaintiff of the disposition of the iron, nor did he know of the special arrangement with Whitehead as to the manner and place of delivery of goods intended for him. The

action is for damages for the loss of the irons and the breach of the contract of carrying.

The only question to be decided is whether the variation in the place of delivery, under the special arrangement with the consignee, of freight intended for him is admissible against the owner and relieves the defendant from liability to the plaintiff. The irons did not belong to Whitehead, were not sent by his order, nor consigned by his consent, and can scarcely come within the provisions of an agreement applicable to his own property only. The contract of affreightment was not under his control, nor any deviation from its terms allowable without the plaintiff's assent. It was made with the plaintiff alone, and explicitly required the transportation and delivery at Greenville and not at any intermediate point. The defendant's agent knew of the consignee's refusal to receive the goods and to pay for them or the freight due, and makes no communication of the fact to the plaintiff, nor any effort to secure the safety of the goods, although the boat made trips on alternate days between the termini of its established route. The freight is at last received from a stranger and the goods, after remaining an entire week on the river bank unprotected, pass, without objection, into his possession, are taken away and converted to his own use. Had they been carried to Greenville and refused, it would have been the clear duty of the carrier to deposit them in a warehouse or other place for safe keeping. This security was not afforded on the river shore where they were left and suffered to remain, exposed and without any protection.

In our opinion the private and special arrangement with Whitehead as to his property (and that the irons were not his was made known when he repudiated the consignment) cannot excuse the defendant in his thus dealing with what belonged to the plaintiff, from the obligation of the contract with him, and still less for the subsequent inat-

tention and negligence in providing for its safety, or giving
information to the plaintiff to enable him to do so. When
the consignee cannot be found or declines to receive the
goods conveyed, the carrier must still take care of them, at
least for a reasonable time and communicate with the
owner. 2 Redf. Rail., 66.

The case of *Sweet* v. *Barney,* 23 N. Y., 335, seems to be
repugnant to the views we have expressed and the court
there say: " The consignee is the presumptive owner of
the thing consigned, and when the carrier is not advised
that any different relation exists, he is bound so to treat the
consignee."

In this case the package of money was not placed in
charge of the officers of the bank at their banking house,
but was put in possession of the porter at another place in
conformity with its usages and an often recognized agency
of the porter to receive and deliver funds sent to the bank,
and it was stolen from him. It is held after three argu-
ments, by a majority of the court, that the defendant did
not deliver the money over and was responsible in damages
for the loss. There is a strong dissenting opinion of Judge
DAVIES, in which, referring to the defence set up and sus-
tained by the other judges, he says: " It would seem to be
a sufficient answer to the defence to say that such was not
the contract made by the defendants with the plaintiffs, and
that they have no legal right to make a new contract, or do
something which they contend is equivalent to that under-
taken to be done by them. There is no pretence that the
plaintiffs were parties to any such modification of the con-
tract made, or had any knowledge of it, or in any manner
assented to it. Nor can it be alleged that the custom of the
defendants in delivering packages to the parties at places
other than the bank can have any effect on the rights of
the plaintiffs. As between the defendants and the bank it
has significance, as to the parties to the contract it is *res*

*inter alios acta,* and the plaintiffs are not deprived of any of their rights by reason of it."

This is a forcible presentation of the matter, and without giving it full concurrence, we may say that our case has an essential and distinguishing feature in that there has been no delivery to any one, but an abandonment upon an exposed river bank, without a provision then or afterwards, where its perils were known, for the preservation or safety of the property, and we will add almost an implied assent to its removal and conversion by a stranger. The unreasonable pretext for this violation, of duty and utter indifference to the owner's interests is put upon an arrangement with one who disavows the entire transaction in regard to his own transported property.

We think upon every principle of law and for reasons of sound policy, the defendant is responsible in damages to the plaintiff. The judgment is reversed, and judgment will be entered for the plaintiff for the agreed value of the lost goods as stated in the case.

Error.                                                    Reversed.